UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTHONY ALEXANDRO LEN NAVA,

                Petitioner,

    v.

MARKWAYNE MULLIN, et al.,

                Respondent.

Case No. 2:26-cv-02324-TLF

ORDER GRANTING PETITION
FOR HABEAS CORPUS

Petitioner, a native, and citizen of Venezuela filed this federal habeas corpus petition pursuant to 28 U.S.C. § 2241 petition though counsel on July 2, 2026. Dkt. 1. Petitioner is currently detained at the Northwest ICE Processing Center (NWIPC). *Id*.

Petitioner challenges his re-detention and continued detention, and argues that the government is in violation of the Due Process Clause of the Fifth Amendment because he has complied with the conditions of his release, there are no allegations he violated those conditions, and the government has not presented any evidence that he poses a danger to the community or a risk of flight. Dkt. 1 at 6-12. He contends that Due Process requires an individualized custody hearing before a neutral adjudicator, with the burden on the government to demonstrate that detention is justified. *Id*.

Petitioner seeks an order directing his immediate release under appropriate conditions of release, or in the alternative, directing respondents to provide an individualized bond hearing before a neutral adjudicator within seven days, at which the

- 1

government bears the burden of proving by clear and convincing evidence that continued detention is justified. Dkt. 1.

Respondents oppose the petition, arguing that "[n]othing in the governing statutes or controlling precedent requires the government to continue Petitioner's release after the expiration of the limited period of parole that Congress authorized." Dkt. 5 at 7. They contend "[p]arole is a discretionary benefit that is automatically terminated at the expiration of the time for which parole was authorized." *Id*.

The parties unanimously consent to proceed before a Magistrate Judge. Dkt. 3. For the reasons below, the Court concludes that petitioner's continued detention violates the Due Process Clause of the Fifth Amendment and GRANTS the petition.

**BACKGROUND**

Petitioner entered the United States on or about March 12, 2024, near Hidalgo, Texas as an arriving alien under U.S.C. § 1225(b)(1)(A) through the CBP One Parole Program. Dkt. 1 at 5; Dkt. 7, Declaration of Lawrence Van Daley (Van Daley Decl.), Dkt. 7-1 (Notice to Appear).

Petitioner was paroled into the United States for two years pending his immigration proceedings, under 8 U.S.C. § 1182(d)(5), and his parole expired March 12, 2026. Dkt. 6, Declaration of Andre Ouk (Ouk Decl.) ¶ 6; Dkt. 7, Van Daley Decl., Ex. 2 (I-94 form), Ex. 3 (I-213).

Petitioner was arrested on June 22, 2026 during an Immigration and Customs Enforcement ("ICE") enforcement operation. Dkt. 1 at 6; Dkt. 6, Ouk Decl. ¶ 7; Dkt. 7, Van Daley Decl., Dkt. 7-3 (Form I-213) at 3 (stating that "petitioner will be held in ICE custody pending a hearing before an immigration judge"). That same day, ICE issued an

- 2

administrative warrant for arrest of alien and notice of custody determination. Dkt. 7, Dkt. 7-4, 7-5 (notice of custody determination) at 2 (stating petitioner does not request an immigration judge review of his custody determination); Dkt. 6, Ouk Declaration ¶ 9 (stating petitioner requested an immigration judge review his custody determination).

Petitioner's immigration proceedings remain pending: he has an application for asylum, withholding of removal, and protection under the Convention Against Torture. Dkt. 1 at 6.

Petitioner appeared for a master calendar hearing before an immigration judge on July 21, 2026. Dkt. 6, Ouk Declaration ¶ 10; Dkt. 8 at 5. His individual hearing is scheduled for August 28, 2026. Dkt. 8 at 5. Plaintiff clarifies that "[a]n individual hearing adjudicates removability and eligibility for relief from removal. It does not adjudicate custody." *Id*.

He argues a Due Process hearing is still required, since the individual hearing "will not determine whether Petitioner presents a danger to the community or a risk of flight. No custody proceeding of any kind is currently scheduled, and Respondents identify no date on which Petitioner will receive an individualized determination that his detention remains justified." *Id*. Respondents argue that petitioner's parole automatically terminated when the authorized parole period expired on March 12, 2026.

**Discussion**

**A. Mandatory Detention and Parole**

Under 8 U.S.C. § 1225, there are two categories of "applicants for admission"—noncitizens who "arrive[ ] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). First, applicants who are covered by §

- 3

1225(b)(1) and second, applicants who are covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1), applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" (with specific exceptions). *Id.* at 287-88 (citing §§1225(b)(2)(A), (B)).

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter, if the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112.

The Supreme Court in *Jennings* held "1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." 583 U.S. at 299.

- 4

Applicants for admission are subject to mandatory detention and may only be released on parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A)' *Jennings,* 583 U.S. at 287. The implementing regulations include another requirement for parole under 8 U.S.C. § 1182(d)(5)(A): the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). "Thus, if a noncitizen has been granted parole, it means that a [Department of Homeland Security] DHS official with authority determined that there were either 'urgent humanitarian reasons' or 'significant public benefit' justifying the parole of that individual, and that the individual did not pose a security or flight risk." *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *2 (W.D. Wash. Feb. 5, 2026).

Under 8 C.F.R. § 212.5(e)(1)(ii), parole terminates automatically upon expiration for the period for which it is authorized and "no written notice shall be required."

Here, there was a three-month delay between the expiration of parole on March 12, 2026 and ICE's arrest of petitioner and re-detention June 22, 2026. And the timing of the arrest was during an ICE operation, rather than a routine assessment that the two-year parole period had automatically expired.

As the court in *Caisa* reasoned, the regulatory scheme mandates that:

> [W]here parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply.

- 5

*Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806 (W.D. Wash. Mar. 12, 2026)(*citing Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026).

When time elapses after the automatic expiration of parole, the regulations provide guidance that, to revoke parole: (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i) (upon accomplishment of the purpose for which parole was authorized or in the opinion of one of the officials that neither humanitarian reasons nor public benefits warrants continued presence, "parole shall be terminated upon written notice to" the noncitizen); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]"); *Zavorin*, 2026 WL 309733, at *2.

The Court adopts the reasoning in *Dieng v. Hermosillo,* 2026 WL 411857, at *6, that under 8 C.F.R. § 212.5(e)(2)(i), if petitioner's parole automatically expired after two years, or in the alternative if it was extended by implication, the respondents were required by federal regulations "to execute any order of exclusion, deportation, or removal 'within a reasonable time'; if that could not be done, they were required to release him on parole again 'unless in the opinion of [a DHS official with authority,] the public interest requires that the [noncitizen] be continued in custody.'" The respondents violated federal law by failing to effectuate any order of exclusion, deportation, or

- 6

removal within a reasonable time, and by failing to make any individualized assessment of whether petitioner should have been given an extension of his parole, or if his parole should be revoked – they failed to show how the purpose for which parole had been granted was accomplished, or that a relevant official made any findings whatsoever about reasons for terminating parole. Therefore, the appropriate remedy is release on the same conditions of parole as existed before his re-arrest and re-detention.

### B. Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors" under *Mathews*: The private interest affected by the official action; the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute

- 7

procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

**1.  Private Interest**

As to the first factor, the Court rejects the notion that petitioner's weighty liberty interest is greatly diminished solely because he is a noncitizen in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action) *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Even under circumstances where the initial decision to detain or release an individual is discretionary, the government's decision to release an individual from custody creates "an implicit promise, [upon which they may rely,] that parole will be revoked only if [they] fail[ ] to live up to the...conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

As the Supreme Court described in *Morrissey*, in addressing parole in the criminal context, "[parole] enables [the parolee] to do a wide range of things open to persons who have never been [in custody or] convicted of any crime[, such as, subject to conditions of parole, to work and to] be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens, [their] condition is very different from that of confinement in a prison." *Id.* "The parolee

- 8

has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and the loss of liberty "inflicts a grievous loss on the parolee[.]" *Id.* at 481–84. Thus, the parolee possesses a protected interest in his "continued liberty." *Id.* at 482. This Court "joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey.*" *Torres v. Hermosillo*, 25-cv-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases).

Here, petitioner was released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and has been successful on parole in the United States for more than two years. The government does not allege that petitioner violated the conditions of parole or that circumstances changes such that he became a danger to the community or a flight risk. He has a protected liberty interest in remaining out of custody.

The first factor weighs in petitioner's favor.

### 2.  Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet there "may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 - *12 (E.D. Cal. Aug. 28, 2025); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021,

- 9

1031-1032, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre-deprivation* hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

Furthermore, for those released on humanitarian parole:

> [D]ue process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) [the noncitizen] be given the opportunity to be heard with respect to the government's basis for re-detention under the applicable statutory and regulatory framework at a meaningful time and in a meaningful manner.

*Dieng v. Hermosillo*, 26-cv-00190-LK, 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026) (internal citations and quotations omitted).

Respondents argue that petitioner was detained solely because his parole automatically terminated on March 12, 2026. Dkt. 7 at 10. They assert that "[t]he decision to detain was therefore a straightforward application of the statutory scheme governing arriving aliens whose parole has ended, not a discretionary revocation of an ongoing release." Dkt. 7 at 10. Yet the three-month delay and petitioner's re-arrest during an ICE operation does not align with the respondents' theory, and these circumstances shifted the statutory authority. When time elapses after the automatic expiration of parole, the regulations provide the following requirements before DHS takes the noncitizen into custody: (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i)

- 10

The government has not shown they revoked petitioner's parole because the original purpose of petitioner's parole was accomplished or that a DHS official with authority determined petitioner's continued parole was no longer warranted for "humanitarian reasons" or for the "public benefit." Nor does the government present any evidence that petitioner received pre-deprivation written notice that his parole would be revoked. The record shows that the government did not follow the procedures required by its own regulations.

Thus, the Court finds the second *Mathews* factor favors petitioner. *See, e.g.*, *Torres*, 2026 WL 145715, at *7 ("the risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus depriving the noncitizen of process due prior to revocation").

**3.  Government's Interest.**

The government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But the government's interest in bypassing basic procedural protections is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.") (emphasis added).

Although it would require the expenditure of resources to provide petitioner with pre-deprivation process, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. "[T]he government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by

- 11

affording the process laid out in 8 C.F.R. § 212.5 [for revocation of parole] because it is required to follow its own regulations." *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025) (internal citations and quotations omitted). Accordingly, the third *Mathews* factor also favors the petitioner.

Therefore, all three *Mathews* factors favor petitioner. Petitioner's detention violates Due Process, and he is entitled to release under the conditions that applied before he was re-arrested and re-detained. *See Zavorin*, 2026 WL 309733, at *5 (finding a violation of due process and granting release where the government failed to follow the statute and regulations in revoking petitioner's humanitarian parole); *Torres*, 2026 WL 145715, at *8 (same).

**CONCLUSION**

For the reasons stated above, the petition for writ of habeas corpus (Dkt. 1) is GRANTED, and the Court ORDERS as follows:

1.  Within 24 hours of this order, respondents shall release petitioner from custody subject to the conditions of his most recent parole agreement;

2.  Within 48 hours of this order, respondents shall file a certification confirming that petitioner has been released;

3.  The Court declares detention and continued detention of petitioner without constitutionally adequate process violates the Due Process Clause of the Fifth Amendment;[1]

---

[1] To the extent petitioner requests other injunctive relief, such as limits on any potential future re-detention, the Court declines to grant this relief and adopts the reasoning of *Saadhom v. Bondi,* 829 F. Supp. 3d 907, 922-23 (W.D. Wash. 2026).

- 12

4.  The Court will entertain an appropriate post-judgment motion for attorney fees and costs.

Dated this 10th day of August, 2026.

_____
Theresa L. Fricke
United States Magistrate Judge

- 13